IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DIANE PEPPER and )
KATRINA HILLIS, )
 )
                Plaintiff, ) NO. 2:05-0054
v. ) JUDGE HAYNES
 )
 )
MANAGEMENT RESOURCES )
COMPANY, LLC d/b/a TACO BELL, )
 )
                Defendant. )

## MEMORANDUM

Plaintiffs, Diane Pepper and Katrina Hills, filed this action under 42 U.S.C. § 2000e et seq., Title VII of the Civil Rights Act of 1964, as amended and the Tennessee Human Rights Act ("THRA") Tenn. Code Ann. § 4-21-101 et seq. against the Defendant Management Resources Company, LLC doing business as Taco Bell. Plaintiffs' claims are that the Defendant subjected them to disparate treatment in the Defendant's promotion decisions based upon their sex and had a promotion practice that had a disparate impact upon its female employees who were eligible for promotions. At the trial in this case, the jury returned a verdict for the Plaintiffs on both theories and awarded Plaintiff Pepper $12,500 and awarded Plaintiff Hillis $76,000.

Before the Court is the Defendant's motion for judgment as a matter of law or alternatively for a new trial or to alter and amend the judgment (Docket Entry No. 181); Plaintiffs' motion for attorney fees (Docket Entry No. 187); and the Defendant's motion for recusal (Docket Entry No. 185).

In their motion for judgment as a matter of law or alternatively for a new trial or to alter and amend the judgment (Docket Entry No. 181), the Defendant contends, in sum: (1) that the Plaintiff Hillis' award of $15,000 for salary and $11,000 for car expenses should be reduced to a three month

period; (2) that the evidence does not support a Defendant's judgment on Plaintiffs' disparate impact claims; (3) that the jury verdict is contrary to the weight of the evidence.

On a motion for a new trial, the Court is to decide if the jury could reasonably reach the verdict based upon the evidence, <u>Powers v. Bayliner Marine Corp</u>. 83 F.3d 790, 798(6th Cir. 1996). A trial court cannot substitute its judgment on credibility for the jury's determinations. <u>Anderson v. Conwood Co.</u>, 34 F.Supp.2d 650, 653 (W.D. Tenn. 1991).

Upon a motion for a new trial, the Court is not to set aside the jury verdict absent a showing of a "seriously erroneous result", <u>Holmes v. City of Massillon, Ohio</u>, 78 F.3d 1041, 1046 (6th Cir. 1996), or where the jury verdict "resulted from passion, bias or prejudice." <u>Farber v. Massillon Bd of Educ.</u>, 917 F.2d 1391, 1395 (6th Cir. 1990). The evidence is also reviewed "most strongly in a light in favor of the verdict." <u>Ross v. Meyers</u>, 883 F.2d 486, 487 (6th Cir. 1989).

To prevail on a motion for judgment as a matter of law, the trial court must review the evidence and conclude that the evidence "points so strongly in favor of the movant that reasonable minds could not come to a different conclusion; then the motion should be granted." <u>Black v. Ryder/P.I.E. Nationwide, Inc.</u>, 970 F.2d 1461, 1470 (6th Cir. 1990).

As to the Defendant's motion for a new trial, the proof established that Hillis wanted to train other employees and repeatedly told her supervisors that she wanted to be promoted to a training position. If promoted to a franchise training manager, Hillis would have been entitled to a substantial salary and bonus increase as well as a car allowance. Unless Pepper, Hills's supervisor were promoted to a position above the store level, Hillis could not become a franchise training manager. If Pepper had been promoted to an Area Coach position, at least in December of 2003, Hillis could have been promoted to a franchise manager position, increased her salary and her

2

bonuses for a least an entire year.

Hillis did not leave Defendants' employment until late December of 2004. Chris Hughes took the training coach position as of September 1, 2004, although his promotion was announced prior to that date. At a minimum, Hillis had at least four (4) months of economic loss damages for Defendants' failure to promote her prior to her resignation. Although the Defendant states that the only evidence at trial was that the training coach position involved a 5%, however, Hillis testified that she was making $36,000.00 at the time she left Defendants' employ and the base salary for the training coach position was $40,000.00. Therefore, Hillis would have had a salary greater than a 10% raise.

The purpose of back pay under Title VII are to deter discriminatory conduct and to encourage employers to evaluate their employment practices. 42 U.S.C. §§ 2000e-5(g); Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975). A court must exercise its discretionary power to award back pay in light of the large objectives of Title VII. Albemarle, 422 U.S. at 416. The purpose of back pay is to make the plaintiff whole and should include lost salary anticipated raises, fringe benefits, step increases, and cost of living increases. Id. The jury determined that Defendants' employment practices illegally discriminated against Plaintiff and found $15,000 to be a fair and reasonable amount to completely redress Hillis's lost wages. "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's findings inconsistent results in a collision with the Seventh Amendment." Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962).

The Court concludes that the jury verdict on the amount of damages to Hillis is reasonable.

3

As to damages for a car allowance, the proof clearly showed that employees promoted to above store level management received a generous car allowance each month. The training coach position required 3500 miles per month of travel. (Plaintiff's Trial Exhibit 46). Although the Defendant seeks to limit Hillis a training coach until September 1, 2004, the jury, however, found that Defendant's lack of a process for promotions above store level discriminated against the Defendant's female employees throughout Hillis's employment. The jury could reasonably have found that if the Defendants had an non-discriminatory promotion process, then Hillis would have applied and obtained the training coach position prior to September 1, 2004. The Defendant's representative actually offered this position to Fred Casperson prior to September 1st. Given the Defendant's lengthy and secret promotion that the jury found discriminatory, the jury could reasonably have concluded that the back pay and car allowance should have begun well before September 1, 2004.

As to Hillis's $50,000 award for emotional harm and the jury possesses discretion in the sum awarded. Hillis's testimony was that she was devastated by the realization that her career path with Defendant was completely blocked due to illegal gender discrimination. The proof was that Hillis had given years of her life to a company that did not value her, causing her loss of self esteem and her depression. The case law reflects larger damage awards for emotional damages in similar legal context. See e.g., Annis v. County of Westchester, 939 F.Supp. 1115, 1121 (the court reduced the jury's compensatory damages award to $266,001 to $100,001 for female police officer). Rush v. Scott Specialty Gases, Inc., 930 F.Supp. 194, 199 (E.D. Pa. 1996), the court reduced the jury's award of $1,000,000 to $100,000 to Title VII plaintiff found to suffer emotional distress and depression); Dickerson v. HBO & Co., No. 92-2758 WL 767193 *3 (D.D.C Dec. 21, 1995) (court deemed jury's damages award of $100,000 for emotional harm for retaliatory treatment. MarMarfia

4

v. T.C. Zirat Bankasi, New York Branch, 903 F.Supp. 463 (S.D.N.Y. 1995) vacated and remanded on other grounds, 100 F,3d 243 (2d Cir. 1996) (upholding jury award of $100,000 for pain and suffering of employee who was harassed and fired because of his national origin).

In reviewing the amount of jury award, "the court need not-and indeed cannot, reconstruct the precise mathematical formula that the jury adopted. Nor need [the court] explore every possible quantitative analysis or compute the basis of each penny and dollar amount. [The court's] inquiry ends once [it is] satisfied that the award is within a reasonable range." Carter v. Duncan-Huggins, Ltd., 727 F.2d 1255, 1239-40 (D.C. Cir. 1984). This is especially true in civil rights cases where injuries are often intangible and non-economic. In such a case the court must be hesitant to disturb the jury's determination of damages. See Ruiz v. Gonzales Carabollo, 929 F.2d 31, 34 (1st Cir. 1991).

Based upon the proof in this action, the Court deems the jury award of $50,000 to the Plaintiff Hillis for emotional damages to be well within the realm of reasonableness.

The Defendant next challenges Plaintiffs' proof of disparate impact of the Defendant's promotions above the store level. The proof established that the Defendant does not post promotions nor are any applications for promotions solicited or accepted. The Defendant does not interview for pormotions. The Defendant has hand picked males employees for management positions above the store level. Dr. Jennings Marshall, Plaintiffs expert established the statistically disproportionate amount of promotions given to male employees. Although the Defendant has almost 60% female restaurant managers, the Defendant has on 15% females in management above the store level. Dr. James King, Plaintiffs' other expert, described the Defendant's promotion process as a method to hide unlawful discrimination. The anecdotal proof included that the Defendant's upper level

5

management was a "boys club" and proof that women employees could not be admitted because they do not have penises. The jury found the Defendant's promotion practices had a disparate impact on women employees, including these Plaintiffs, and that finding is supported by substantial evidence.

Plaintiffs move for their attorney fees and costs (Docket Entry No. 187) under 42 U.S.C. § 2000e-5(k) that provides:

> In any action or proceeding under this subchapter, the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

To award attorney's fees, the party must be a "prevailing party" and any requested fee must be reasonable. Farrar v. Hobby, 506 U.S. 103, 109 (1992). A plaintiff prevails in an action "when actual relief on the merits of her claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Id. at 111-112. "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." Id. at 113.

Here, with the jury's verdict Plaintiffs are clearly "prevailing parties." The jury awarded Plaintiffs compensatory damages on both of their theories of liability. Plaintiffs' motion is supported by affidavits and detailed entries for their work.

For a reasonable attorney's fee, courts apply the "lodestar" analysis that determines a reasonable hourly rate and whether the number of hours expended by counsel are reasonable for the action. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986).

6

The Court multiples counsel's hourly rate by total hours to determine the "lodestar figure." The reasonableness of the hourly rate and number of hours expended are evaluated by twelve factors. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

- (1) the time and labor expended;
- (2) the novelty and difficulty of the questions raised;
- (3) the skill required to properly perform the legal services rendered;
- (4) the attorney's opportunity costs in pressing the instant litigation;
- (5) the customary fee for like work;
- (6) the attorney's expectations at the outset of the litigation;
- (7) the time limitations imposed by the client or circumstances;
- (8) the amount in controversy and the results obtained;
- (9) the experience, reputation and ability of the attorney;
- (10) the undesirability of the case within the legal community in which the suit arose;
- (11) the nature and length of the professional relationship between attorney and client; and
- (12) the attorney's fees awards in similar cases.

Id. at 717-19.

As to time and labor expended, Plaintiffs' counsel's fee statements for each attorney demonstrates the time, activity and labor expended in this action. The Court's review of the record in this action, leads the Court to find this factor as favoring Plaintiffs. As to novelty and difficulty of this case, the law was clearly established, but factually this was a difficult and hotly contested action and trial. The Defendant only turned over performance evaluations for the year immediately

7

preceding Plaintiffs' complaint with the Equal Employment Opportunity Commission, a year in which Plaintiff Pepper's store suffered a devastating fire.

As to the skill required and the legal services rendered, Plaintiff note that defense counsel are members of large multistate firm. As discussed infra, Plaintiffs' counsel are in a four person law firm in McMinnville, Tennessee and are able and experienced lawyers. The Defendant's counsel had ample legal resources to litigate this action fully and did so, thereby increasing Plaintiffs' counsel's time.

As to the attorney's opportunity costs, the volume of pleadings and discovery in this action attest the extensive time Plaintiffs' counsel donated to this action that adversely impacted their ability to handle other cases.

As to the customary fee for like work, the law firm of Galligan & Newman bills Mike Gilligan's time in employment related to civil rights cases in federal court at the rate of $300.00 per hour. Susan Marttala's hourly fee for civil rights cases in federal court is $250.00. Plaintiffs offer proof that these fees are customary in this district for this type of litigation. See affidavit of John Konvalinka.

As to the attorney's expectations at the outset of the litigation, Plaintiffs' motivating purpose was demonstrate Defendant's glass ceiling for its women employees. Although the Defendant has almost 60% female restaurant managers, the Defendant has on 15% females in management above the store level. The Defendant lacked a written promotion process and denied any discrimination on it promotion system. The Defendant took a hard line approach and refused mediation.

As to time limitations on the client, on the eve of trial, lead counsel's sudden and serious illness caused a continuance. In February, 2007, Plaintiff Pepper was hospitalized. This action has

8

been trying for the Plaintiffs and their counsel.

As to the amount in controversy and the results obtained, the jury's verdict reflect that this factor highly favors the Plaintiffs. See Hensley v. Eckerhart, 461 U.S. 424, 436 (1983). Plaintiffs' counsel note that Plaintiffs fought for the principle of gender equality and to change the discriminatory system for promotions. Plaintiffs' prevailed on their disparate impact and disparate treatment claims that are distinct legal theories. This factor heavily favors Plaintiffs.

As to the experience, reputation, and ability of Plaintiff's counsel, Galligan is the founding partner in the law firm of Galligan & Newman. Galligan has 36 years of experience in civil litigation, with significant trial experience in employment related civil rights cases. He has been an adjunct professor at the University of Tennessee College of Law. He has an AV rating from Martindale Hubbell rating system. Marttala is an associate with Gilligan and Newman and is a graduate of the Vanderbilt University School of Law with over 20 years of experience. Marttala served as District Attorney General for the 31st Judicial District, Municipal Judge for the City of McMinnville, and partner in the law firm of Marttala and Marttala. Marttala has had significant experience in the area of employment related civil rights cases during her ten years with Galligan & Newman. Galligan and Newman currently represent the City of McMinnville, the Industrial Development Board for McMinnville-Warren County, Tennessee, the McMinnville Electric System, The Warren County School Board, West Warren Utility District, Big Creek Utility District and Riverpark Hospital. The firm is listed in the Bar Register of Preeminent Lawyers in General Practice.

As to the undesirability of the case, counsel for Plaintiffs considered this action to be a difficult fight to the end and their assessment was prophetic. As to the nature and length of the

9

attorney-client relationship, counsel for Plaintiffs are unaware of any previous representation of these clients.

As to the attorney's fees awards in similar cases, Plaintiffs seek $178,707.50 in attorney's fees. This fee is entirely reasonable, given the difficulty of the issues, the strenuous defense, the necessity of trial and the successful outcome. Plaintiffs cite McKenzie v. Cooper, Levins & Pastko, Inc., 990 F.2d 1183 (11th Cir. 1993) awarding attorney's fees and costs in the amount of $121,435.63, for a Title VII claim of discharge based upon sex and that awarding Plaintiff reinstatement, back pay in the amount of $8,618.10. Considering the factors listed above, the Court concludes that Plaintiff's application for $178,707.50 in attorney fees reasonable.

Fed.R.Civ.P. 55 (d)(1) provides that costs other than attorney's fees shall be allowed to the prevailing party unless the court directs otherwise. 28 U.S.C. §§ 1920 defines able costs as "(1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for used in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. section 1983 . . .; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. section 1828. . ." See 28 U.S.C. § 1920.

Plaintiffs' bill of costs herewith lists their costs and expenses and provide supporting documentation. The Court approves of Plaintiffs' counsel's expenses as incidental and necessary expenses and awards $18, 226.77.00 in expense. The total award of attorney fees and costs is $196,934.27.

The Defendant also moves for recusal. This motion arises out of the Defendant's

10

representative's confrontation with another Plaintiff's boyfriend that occurred during the trial of another case in Columbia, Tennessee. This confrontation resulted in calling the local police. Beyond describing the matter further, the Court was not pleased and did question whether to preside at a retrial of that case. That incident has no bearing on this action. The Court will not pass on the Defendant's representative's credibility, the jury has already done so. The Court will not reward the Defendant for its representative's questionable conduct and to do so would perpetrate a miscarriage of justice to the Plaintiffs and the jury's verdict. This motion is denied.

An appropriate Order is filed herewith.

**ENTERED** this the 23rd day of August, 2007.

WILLIAM J. HAYNES, JR.
United States District Judge